**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09cv329**

| | | |
|---|---|---|
| FREDA GOLDSTEIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendant's Motion to Dismiss Complaint. Having carefully considered defendant's Motion to Dismiss Complaint and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Background

Plaintiffs are purchasers of lots in a residential development in Rutherford County, North Carolina known as "the Grey Rock development" (hereinafter "Grey Rock"). Compl. ¶¶ 3, 7-10. Grey Rock was marketed, and to some extent developed, by LR Buffalo Creek, LLC (hereinafter "Land Resources"). Compl. ¶¶ 6-10. Land Resources is not, however, a named defendant in this action; rather, plaintiffs herein

attempt to assert causes of action against Bank of America (hereinafter "BOA"), which allegedly financed plaintiff's lot purchases from the developer. The thrust of plaintiffs' Complaint is that the lots they purchased are now worth less than what the plaintiffs paid for them, at least in part because Land Resources failed to complete roads, infrastructure and amenities expected by plaintiffs, Compl. ¶ 7, and it is their contention in this action that BOA is responsible for their losses based on a theory that BOA somehow unlawfully conspired with the developers or that BOA as a lender owed them, as borrowers, some fiduciary obligation.

* * *

The undersigned has been referred a number of cases involving this failed development, issued a number of Orders and Recommendations, and will, therefore, take judicial notice of certain facts that form the background to this action. Such recitation of facts is not intended to bind the court or these parties, but is instead intended to provide reviewing courts with a clearer understanding of the utter failure of this development and the resulting legal morass. From the outset, the court is most certain that all parties to this action have suffered losses due to the actions of the developer. Plaintiffs own properties that are likely worth a fraction of what they paid and defendant is likely holding commercial paper or is responsible for commercial paper, through recourse, that are now undercollateralized. The fundamental failure

of this development came about when the developer, in its *mesne* incarnations, failed to complete infrastructure improvements that it had promised to the lot purchasers (which include plaintiffs herein) and to Rutherford County (which is a plaintiff in another action pending before this court). In such other actions, it has been alleged that the developer and the entities under which it sold the lots simply pocketed all the proceeds at the time of closing, put no funds into escrow to assure infrastructure completion, and then abandoned the development. While Rutherford County had the foresight to require the developer to secure such obligation by way of bond, the bonding company (which is a defendant in one action before this court and a plaintiff in another) has yet to pay over the bond to Rutherford County or complete the required work. It also appears clear that without completion of the infrastructure the lots have little value above that of raw mountain land.

* * *

Against such backdrop, plaintiff lot owners bring this action against their lender. Plaintiffs allege that BOA "engaged in a joint venture" with Land Resources and "did otherwise exceed their ordinary course of dealing, promotion, marketing and sale of lots in conjunction with [Land Resources.]" Compl. ¶ 6. They further allege that BOA "knowingly assisted, facilitated and furthered [Land Resources'] fraudulent scheme," Compl. ¶ 8, and that it "knowingly and intentionally disseminated the

materially false and misleading information contained in [Land Resources']
marketing materials directly related to the construction and completion of the Grey
Rock development." Compl. ¶ 10. They further allege that BOA was named in Land
Resources' marketing materials for the Grey Rock development as one of several
"preferred/recommended lenders." Compl. ¶ 8.

In their Complaint, plaintiffs assert seven causes of action against BOA, as
follows:

(1)    Count One: Violation of the Racketeer Influenced and Corrupt
       Organizations Act (hereinafter "RICO")

(2)    Count Two: Fraud;

(3)    Count Three: Unconscionability;

(4)    Count Four: Violations of the Real Estate Settlement Procedures Act
       ("RESPA");

(5)    Count Five: Civil Conspiracy;

(6)    Count Six: Rescission; and

(7)    Count Seven: Breach of Fiduciary Duty.

BOA has moved to dismiss each of these claims under Rule 12(b)(6), arguing that
plaintiffs have failed to state a claim on which relief may be granted against it.

## II. Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiffs could prove no set of facts which would support their claim and entitle them to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment]

to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, plaintiffs must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a

defendant has acted unlawfully." Id. Thus, a complaint fall short of the plausibility standard where plaintiffs plead "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the Complaint herein, the court has accepted as true all of the factual allegations contained in the Complaint, and, as well, has identified "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft, supra, at 1950. As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

## III. Discussion

### A. Introduction

As discussed more thoroughly below, all of these claims fail under Rule 12(b)(6); more fundamentally, they fail because they rest on an implausible factual contention, to wit, that BOA conspired or engaged in a joint venture with the

developer, the object of which was to unlawfully enrich the developer at the expense not only of the lot purchasers, but at the expense of BOA. The logical flaw with plaintiffs' claims is that BOA conspired to harm itself by making substantial loans that would end up substantially unsecured if the alleged conspiracy was successful. See Iqbal, 129 S. Ct. at 1951.

**B.    Failure to Allege a Plausible Joint Venture**

All of plaintiffs claims pivot on the existence of concerted action or a joint venture between BOA and the developer. Specifically, plaintiffs allege that BOA engaged in a "joint venture" with Land Resources to defraud Plaintiffs by selling them overvalued real property. Compl. ¶¶ 6-10.   While plaintiffs allege that "consideration" was exchanged between BOA and Land Resources in association with this supposed venture, Compl. ¶ 8, they fail to allege what this consideration might have been. Reading the allegations of the Complaint in a light most favorable to plaintiffs, they appear to contend that  BOA engaged in a joint venture or scheme as follows:

> BOA knowingly devised and participated in a scheme whereby BOA:
> (1) deceived borrowers about the terms and conditions of the loans; (2) knowingly executed loans for the purchase of land under false pretenses; and (3) solicited inflated appraisals of the properties in order to extract higher fees. The inflated appraisals also had resulted in locking the borrowers into these predatory loans. BOA devised and participated in this scheme with the intent of defrauding borrowers, enhancing its own

income, and defrauding investors who would ultimately purchase the loans.

Compl. ¶ 18.

First, the undersigned has considered plaintiffs' allegation that BOA solicited inflated appraisals to extract higher fees. The decision of the district court in <u>Feeley v. Total Realty Management</u>, 2009 WL 2902505 (E.D.Va. Aug. 28, 2009),[1] which involved underlying facts nearly identical to this action, is highly instructive. Faced with nearly identical claims, the district court reasoned in dismissing plaintiffs' claims with prejudice that

> Plaintiffs claim as a threshold matter that the Banks colluded with TRM, corrupt real estate appraisers and bank loan officers to arrange for unsuspecting investors to enter into loans the investors could never pay, in land they could never sell, that was overvalued; and now that TRM has declared bankruptcy, that the Banks must charge off the investor loans and repay the investors. What does the bank get out of this, loan fees, foreclosed upon unimproved land to carry on their books? To the extent that Plaintiffs have essentially alleged that the banks and Maryville were in cahoots with TRM, as the basis for Liability these allegations are simply implausible. . . .This is especially true, in light of the Complaint's utter failure to allege how the banks entering into a scheme to make under-collateralized loans would be in their self-interest.

<u>Id.</u>, 2009 WL at 5. As in <u>Feeley</u>, BOA's participation in this type of scheme would

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

make no sense and it does not appear that plaintiffs can make any plausible allegation that would support any such conclusion. While plaintiffs may well assert that an inflated appraisal could lead them to pay more for a lot than it is actually worth, they fail to note that the same appraisal would harm also BOA by overvaluing the value of the collateral securing the loans. Such an implausible scenario would be insufficient to support a claim for relief. Iqbal, supra, 129 S. Ct. at 1951.

Beyond such implausible inference, no other reasonable inference can be drawn from the Complaint as to BOA's incentive or "consideration" for joining in the alleged joint venture. While plaintiffs allege in paragraph 18 of the Complaint that BOA was motivated by loan fees, an identical allegation was soundly rejected by the district court in Feeley as implausible. Indeed, such a theory makes no logical sense as bank fees are typically paid at closing from loan funds, they typically amount to little more than one or two percent of a loan, and if such loan is not repaid, the fee is in effect never realized nor collected. As another court found,

> we can think of no logical reason why [a] Bank would make it a practice to intentionally make loans for an amount in excess of the collateral's value and risk substantial losses in the event of default.

Robertson v. First Union Nat'l Bank, 565 S.E.2d 309, 315 (S.C. Ct. App. 2002).

Beyond the implausibility of any inference of joint venture, review of the factual allegations (as opposed to legal conclusions) fails to uncover any factual

allegations upon which a finder of fact could conclude that BOA was engaged in a joint venture with the developer. The elements of a joint venture under North Carolina law are, as follows:

(1)     an agreement to engage in a single business venture with the joint sharing of profits;

(2)     with each party to the joint venture having a right in some measure to direct the conduct of the other through a necessary fiduciary relationship.

Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 403 (M.D.N.C. 2003).

Aside from a broad allegation that BOA engaged in a joint venture, plaintiffs have failed to allege any specific agreement which, if later proved, could support each and every element of a North Carolina joint venture. Further, the allegations of the Complaint are antithetical to proof of the elements of joint venture inasmuch as plaintiffs have alleged that BOA's intent was to "generate profits for themselves [sic]." Compl. ¶ 19. There simply is no allegation that could satisfy the element of "joint sharing of profits." Indeed, if the court were to fully credit plaintiffs' theory, the only party in this supposed joint venture that could make money was the developer as both the lot purchasers and the lenders would be left holding the bag on

a lot that was worth a small fraction of either the purchase price or the amount of the loan.

The court has also considered the second element of a joint venture, which requires joint control of the conduct of the other through some sort of fiduciary obligation. While plaintiffs assert that BOA was one of several lenders included in Grey Rock-related "marketing materials,"plaintiffs make no allegation that BOA made any capital contributions to Land Resources or that BOA had the ability to exercise control over other alleged joint venturers, or *vice versa*. Thus, plaintiffs have failed to make sufficient plausible allegations as to the second element of a joint venture.

For these reasons, the undersigned will respectfully recommend to the district court that all of plaintiffs' claims against defendant be dismissed as they are founded on a legal premise which has not been and cannot be properly invoked.

### C.     Individual Review of Plaintiffs' Claims Under Rule 12(b)(6)

In addition to reviewing the claims from the perspective of joint venture, the court will also conduct a *seriatim* review of each claim under Rule 12(b)(6) in an abundance of caution.

#### 1.     Count One: Violation of the Racketeer Influenced and Corrupt Organizations Act

In claiming that BOA is engaged in "racketeering activity," Compl. ¶ 21, the plaintiffs invoke RICO under federal law.  Id., at ¶ 15.  Without providing details of such organization, plaintiff alleges that

> BOA along with LR and others, willfully combined, conspired and agreed to form an association in fact which constitutes an "Enterprise" under 18 U.S.C. § 1961(4). BOA was associated with the Enterprise at all times relevant to the events alleged herein.

Id.  The allegations of the Complaint simply are insufficient to survive Rule 12(b)(6) analysis because, where plaintiffs allege a violation of RICO, they

> must plead [the] circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).

Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007) (citations and corresponding quotation marks omitted).

Not only must such be alleged with specificity, the allegations must also meet the plausibility requirement of Iqbal, supra.  Plaintiffs have failed to allege any specific unlawful act by BOA which could plausibly amount to racketeering activity under federal law. 18 U.S.C. § 1961(1).  The only allegations plaintiffs offer in support of their RICO claim against BOA are the most general statements that BOA "devised and participated in a scheme … with the intent of defrauding borrowers, enhancing its own income, and defrauding investors who would ultimately purchase

the loans." Compl. ¶ 18.  Such allegations are conclusory and even if proven to be true would not form a sufficient basis for a jury to find "racketeering activity" within the meaning of RICO.  Speculation of wrongdoing by plaintiffs is an insufficient basis for asserting a civil RICO, as the plaintiff's must specifically state two or more acts on the part of the defendant that could amount to "racketeering activity" under the terms of the statute. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004).  The undersigned will therefore recommend that Count One be dismissed.

### 2.    Count Two: Fraud.

In Count Two of the Complaint, plaintiffs allege fraud.  Fraud may occur through misrepresentation or through omission under North Carolina common law. The essential elements of a claim of fraud by misrepresentation are: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Jolly v. Acad. Collection Serv., 400 F. Supp. 2d 851 (M.D.N.C. 2005).  To satisfy the specificity requirements of Rule 9(b), it is plaintiffs' obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby.  In order to plead fraud by omission, a plaintiff must allege the

following:

> (1) the relationship or situation giving rise to the duty to speak, (2) the
> event or events triggering the duty to speak, and/or the general time
> period over which the relationship arose and the fraudulent conduct
> occurred, (3) the general content of the information that was withheld
> and the reason for its materiality, (4) the identity of those under a duty
> who failed to make such disclosures, (5) what those defendant(s) gained
> by withholding information, (6) why plaintiff's reliance on the omission
> was both reasonable and detrimental, and (7) the damages proximately
> flowing from such reliance.

Breeden v. Richmond Community College, 171 F.R.D. 189, 195 (M.D.N.C. 1997)

(citations omitted). See also Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp.

2d 793, 797 (E.D.N.C. 2005). Review of the allegations of the Complaint does not

reveal specific allegations that would satisfy Rule 9(b) and , further, does not reveal

plausible allegations under Rule 12(b)(6).

Turning first to Rule 9(b), such rule requires that "in alleging fraud or mistake,

a party must state with particularity the circumstances constituting the fraud or

mistake." Fed.R.Civ.P. 9(b).  A complaint which contains"[m]ere generalities and

conclusory allegations of fraud will not suffice" to support a claim for fraud.  Norman

v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003) (citation

omitted).   At a minimum, plaintiffs must allege the "time, place, and content of the

false representations, as well as the identity of the person making the representations

and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176

F.3d 776, 784 (4th Cir. 1999).

Applying the reasoning of <u>Harrison</u> to the allegations of the Complaint, plaintiff has failed to make even a threshold showing. While plaintiffs alleges that that BOA made false statements concerning the loan agreements for the purchase of land at Grey Rock and disseminated false and misleading information contained in Land Resources' marketing materials, Compl. ¶ 24, plaintiffs fail to allege that any employee of BOA made any specific representation to any particular plaintiff concerning the value or any other attribute of any particular lot in the Grey Rock development. This gap between the allegations contained in the Complaint and the requirements of <u>Harrison</u> is the difference between general, conclusory pleading and the specificity required under Rule 9(b) in pleading fraud. Plaintiffs have failed to allege any of the factual circumstances surrounding the alleged misrepresentations, including the time, place and content of any misrepresentations allegedly made by BOA. The undersigned will recommend that this claim be dismissed under Rule 9(b) as fraud by either misrepresentation or omission has not been plead with the required specificity.

Turning next to Rule 12(b)(6), plaintiffs' allegations of fraud also do not satisfy the pleading requirements of <u>Iqbal</u>. In relevant part, plaintiffs allege that BOA made "false statements concerning the loan agreements for the purchase of land constituting

the Grey Rock development." Compl. ¶ 24. They also allege that BOA "disseminated" false and misleading statements made by Land Resources in Land Resources' marketing materials. North Carolina common law requires that a fraud-based cause of action against a corporate actor, such as BOA, include specific allegations regarding the identity of the individuals who made the alleged misrepresentation, the circumstances in which the alleged misrepresentation was made and whether the individual who allegedly made the misrepresentations had sufficient authority to bind the corporate entity. See Coley v. N.C. Nat'l Bank, 41 N.C. App. 121, 125-26 (1979). Put another way, plaintiffs are obligated to allege who made the misrepresentations, when and under what circumstances such misrepresentations were made, and the authority such persons had or purported to have to bind the corporation. Simply pointing to a brochure patently generated by the developer is not sufficient inasmuch as plaintiffs have made absolutely no allegations that the developer had any authority, apparent or otherwise, to bind BOA. The undersigned will, therefore, respectfully recommend that Count Two of the Complaint be dismissed pursuant to Rule 12(b)(6).

### 3. Count Three: Unconscionability.

Count Three of the Complaint appears to be based on the equitable doctrine of unconscionability. "Unconscionability" has never been recognized as free-standing

claim under North Carolina common law.  Instead, unconscionability is generally an affirmative defense to a claim that a contract was breached.  See Tillman v. Commercial Credit Loans, Inc., 655 S.E.2d 362, 369 (N.C. 2008); Raper v. Oliver House, LLC, 637 S.E.2d 551, 554-55 (N.C. App. 2006).

Closer review of this cause of action reveals that the relief these plaintiffs seek based on the allegedly "unconscionable" loans they received is recision of the loan agreement.  Recision is a recognized cause of action under North Carolina common law, and has been plead by plaintiffs in another count of the Complaint.  While it is clear that other states within the Fourth Circuit have recognized a cause of action for unconscionability, review of North Carolina decisions reveals that no federal or state court has recognized such a claim under North Carolina law, and the undersigned does not believe that a valid argument could be made for the extension of North Carolina law in such area inasmuch as the state's common law already recognizes an adequate remedy, recision. The undersigned must, therefore, recommend that Count Three of the Complaint be dismissed as plaintiffs have failed to state a cognizable claim under North Carolina law.

### 4.    Count Four: The Real Estate Settlement Procedures Act.

Plaintiffs next allege that BOA violated Section 2607 of the Real Estate Settlement Procedures Act ("RESPA") by engaging "in a course of dealing [with

Land Resources] that resulted in business referrals and/or profit sharing and the splitting of fees." Compl. ¶ 39. Section 2614 of RESPA provides, however, that claims for violations of § 2607 must be brought within one year from the date of the occurrence of the violation:

> **§ 2614. Jurisdiction of courts; limitations**
> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and **1 year in the case of a violation of section 2607** or 2608 of this title **from the date of the occurrence of the violation**, except that actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

12 U.S.C. § 2607(emphasis added); see Booker v. Washington Mut. Bank, 2007 U.S. Dist. LEXIS 9632, at *11 (M.D.N.C. Feb. 9, 2007).

Review of the pleadings, including the exhibits annexed to the Complaint, reveals that the events upon which plaintiffs' claims are founded all occurred before June 2007. See Compl. Exs. A, B1-B18. Plaintiffs did not file this suit until August 27, 2009, which was more than two years from "the date of the occurrence of the violation . . . ." 12 U.S.C. § 2607. The one- year statute of limitation had, therefore, run at the time this action was filed. The undersigned will recommend, therefore, that such claim be dismissed with prejudice as it is time barred.

### 5. Count Five: Civil Conspiracy.

While there is no freestanding cause of action for "civil conspiracy" under North carolina law, the elements of a claim seeking damages for the wrongful acts committed in the course of a civil conspiracy in North Carolina would appear to be:

(1) an agreement between two or more persons to commit a wrongful act;

(2) an act in furtherance of the agreement; and

(3) damage to the plaintiff as a result of the wrongful act.

See Henderson v. LeBauer, 101 N.C. App. 255, 260 (1991). As this district has recently recognized, this claim cannot be brought independent of a properly-alleged claim for underlying wrongdoing, making such claim subject to dismissal if the underlying claim for wrongful conduct is dismissed. Precision Components, Inc. v. C.W. Bearing USA, Inc., 3:06-CV-259 (W.D.N.C. Dec. 16, 2008) (Reidinger, J.). As provided for elsewhere in this recommendation, plaintiffs' underlying claims for wrongful conduct are all subject to dismissal, making the claim for "civil conspiracy" also subject to dismissal. More precisely, plaintiffs appear to base their civil conspiracy claim on their underlying claim of fraud. Compl. ¶¶ 43-44. As discussed above, plaintiffs' claim of fraud is not viable as it has been insufficiently plead and further is based on an implausible allegation of fact. It appearing that all possible claims underlying a cause of action for civil conspiracy are not viable, the

undersigned must also recommend that this claim be dismissed.

### 6. Count Six: Rescission.

In their sixth cause of action, plaintiffs seek recision of the loan agreements. Rescission contemplates that each party will be restored to the status it had before the contract was entered. American Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 820 (4th Cir. 2007); Brannock v. Fletcher, 271 N.C. 65, 74-75 (1967). To successfully allege rescission in the context of a loan agreement, plaintiffs must allege that they are ready, willing, and able to return the loan proceeds to BOA. American Mortg. Network, 486 F.3d at 821. Plaintiffs have made no such allegation and it does not appear from their responsive brief that they are prepared to make such an allegation or tender the loan proceeds to BOA.

A similar claim was made in Feeley, supra, under similar circumstances, and the district court there explained, as follows:

> Plaintiffs seek rescission of the contract while simultaneously acknowledging an unwillingness to render what they have received…. Plaintiffs' unwillingness to do their part to reestablish the status quo precludes any relief in the form of rescission of the contract.

Feeley, 2009 WL at *7.

The undersigned must, therefore, recommend that this cause of action be dismissed under Rule 12(b)(6) inasmuch as plaintiffs have failed to allege an essential

element of such a claim, which is that they are ready, willing, and able to return the loan proceeds to BOA.

## 7. Count Seven: Breach of Fiduciary Duty.

In Count Seven, plaintiffs allege that BOA breached its fiduciary obligation to them. A fiduciary relationship must, however, exist between the parties before a claim can arise for breach of that fiduciary duty. White v. Consol. Planning, Inc., 166 N.C.App. 283, 293 (2004), disc. review denied, 359 N .C. 286 (2005). It is well settled that a fiduciary relationship arises only when plaintiffs place special confidence in another person, to the extent that the party in whom such special confidence is placed is bound to act in the best interests of the party placing the confidence. Dalton v. Camp, 353 N.C. 647, 651 (2001). An essential element of the fiduciary relationship is that the purported fiduciary exercised influence over the plaintiffs by virtue of the trust placed in such alleged fiduciary. Id., at 652.

Plaintiffs allege that BOA breached a fiduciary duty owed to them arising from the parties' lender/borrower relationship. Compl. ¶ 56. Plaintiff also allege that BOA's "exceeded that of a lender in a traditional lender/borrower relationship" and that BOA "received a greater economic benefit than from a typical lending transaction." Id. Assuming that plaintiffs are attempting to allege that BOA crossed the line between lender and developer, no fiduciary relationship at law exists between

the developer and purchaser of property. <u>Morris v. Hennon & Brown Properties,</u> <u>LLC</u>, 2008 WL 2704292, at 5 (M.D.N.C. 2008).

More germane to this claim, there is no fiduciary relationship between a lender and a borrower under North Carolina law. <u>Branch Banking & Trust v. Thompson</u>, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992) ("The mere existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship.") Further, the Court of Appeals for the Fourth Circuit recognized in <u>South Atlantic Ltd. P'ship of</u> <u>Tenn. L.P. v. Riese</u>, 284 F.3d 518, 533 (4th Cir. 2002), that

> North Carolina is reluctant to impose 'extracontractual fiduciary obligations' in the context of general commercial contracts; thus, even when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other.

<u>Id.</u> (citation omitted); <u>See</u> <u>also</u> <u>Smith v. GMAC Mortg. Corp.</u>, 2007 WL 2593148, at *6 (W.D.N.C. Sept. 5, 2007). Plaintiffs have made no plausible allegations that BOA "thoroughly dominated" them in the transaction. The undersigned will recommend that this count also be dismissed as plaintiffs have failed to state a cognizable claim under North Carolina law or satisfy the pleading requirements under <u>Iqbal.</u>

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

defendant's Motion to Dismiss Complaint (#16) be **ALLOWED** and that the Complaint be dismissed in its entirety for the reasons provided above.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: January 19, 2010

Dennis L. Howell
United States Magistrate Judge